**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

In re:                              )   BAP No.   CC-13-1563-KiTaD
                                    )
GENTILE FAMILY INDUSTRIES,          )   Bk. No.   13-16402-TA
                                    )
                Debtor.             )
_____)
                                    )
DIATOM, LLC,                        )
                                    )
                Appellant,          )
                                    )
v.                                  )   **M E M O R A N D U M**[1]
                                    )
COMMITTEE OF CREDITORS HOLDING)
UNSECURED CLAIMS; GENTILE           )
FAMILY INDUSTRIES,                  )
                                    )
                Appellees.          )
_____)

Argued and Submitted on June 26, 2014,
at Pasadena, California

Filed - August 19, 2014

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Theodor C. Albert, Bankruptcy Judge, Presiding

Appearances:     David Max Gardner, Esq. of Young Wooldrige LLP
                 argued for appellant, Diatom, LLC; Jeffrey Wayne
                 Broker, Esq. of Broker & Associates PC argued for
                 appellee, Gentile Family Industries; Nanette D.
                 Sanders, Esq. of Ringstad & Sanders LLP argued for
                 appellee, Committee of Creditors Holding Unsecured
                 Claims.

Before:  KIRSCHER, TAYLOR and DUNN, Bankruptcy Judges.

---

[1] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

Creditor Diatom, LLC ("Diatom") appeals an order approving the motion of chapter 11[2] debtor Gentile Family Industries ("GFI") to assume an unexpired nonresidential real property lease. We AFFIRM.[3]

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

**A.    Events prior to GFI's bankruptcy**

GFI's principal business is an open pit diatomaceous earth mining operation on land leased from Diatom. Steven Gentile ("Gentile") is the President of GFI. GFI pays royalties to Diatom based upon the tonnage of diatomaceous earth mined. Virtually all of GFI's business comes from the Diatom mining operation. Diatom is comprised of three members — Mr. and Mrs. Cooper and their son David Cooper.

Although GFI had been mining on the Diatom property since 2001, the parties did not have a written lease until 2006. On January 12, 2006, GFI and Diatom executed a Land Use Agreement for Mining Purposes (the "Cooper Lease"). The Cooper Lease had an initial term through December 31, 2010, with the option for additional five year terms:

> Term. The initial term of the Agreement shall be from the date of this Agreement to and including December 31, 2010 . . . . The Term shall be for five (5) years with the option for additional five (5) year terms as long as all conditions of operation meet the "Owner's" approval and both "GFI" and "Owner" agrees [sic] to future use of

---

[2] Unless specified otherwise, all chapter, code and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

[3] GFI filed a motion to supplement the record, which includes several notices of cure payments in connection with its approved motion to assume. Because these exhibits have no bearing on our decision in this appeal, we DENY the motion.

-2-

the same surface areas as currently agreed upon, unless sooner surrendered or otherwise terminated.

The Cooper Lease expired on December 31, 2010. Nothing was expressly communicated between the parties about exercising the option for another five-year term, but they proceeded with business as usual for the next thirty months until GFI's bankruptcy filing in July 2013. Gentile testified that at all times subsequent to December 31, 2010, he believed the Cooper Lease was in its second five-year term.

In or around 2012, GFI fell behind on its royalty payments to Diatom. On July 13, 2013, Diatom served a 30-day notice to cure over $140,000 in royalty arrearages and other various defaults under the Cooper Lease (the "Default Notice"). The Default Notice reminded GFI of its unfulfilled obligations for biannual increases in the royalty rates according to the terms of the Cooper Lease, noting that the lease was "now in its seventh (7) year of life[.]"

**B. Postpetition events**

**1. GFI's motion to assume the Cooper Lease**

In response to the Default Notice, GFI filed a chapter 11 bankruptcy case on July 29, 2013, and timely moved to assume the Cooper Lease under § 365(b)(1)("Motion to Assume"). GFI argued the Cooper Lease was not expired and, thus, was assumable based on the parties' conduct, Diatom's admission in the Default Notice that the Cooper Lease was in its "seventh (7) year of life" and because no written communication existed to suggest the Cooper Lease was anything other than in its first renewal term. GFI argued that if it was not allowed to assume the lease, it would be forced to close its business and cease operations almost

-3-

immediately, leaving little or no recovery for unsecured creditors. The Official Committee of Creditors Holding Unsecured Claims joined in GFI's motion, contending it would help promote a successful reorganization and was in the best interest of creditors.

Diatom opposed the Motion to Assume on two grounds: (1) GFI was improperly using the assumption process under § 365 to get a declaratory ruling that the Cooper Lease's term was something other than month-to-month;[4] and (2) the Cooper Lease was not in the middle of a second five-year term as contended by GFI. Diatom argued that under CAL. CIV. CODE § 1945, GFI became a month-to-month tenant effective January 1, 2011, because it had not exercised the option to extend the Cooper Lease by an additional five-year term. Relying on the paragraph entitled "Notices," Diatom argued that because GFI did not communicate a renewal in writing, the Cooper Lease was not renewed in January 2011:

> Notices. All notices and other communications to other party shall be given in writing and shall be sufficiently given if (i) delivered in person, (ii) sent by electronic communication, with confirmation sent by registered or certified mail, return receipt requested, or (iii) sent by registered or certified mail, return receipt requested . . . .

Diatom disputed GFI's assertion that the "seventh (7) year of life" comment Mrs. Cooper made in the Default Notice evidenced the parties' agreement the Cooper Lease was in a second five-year term. Her description simply identified that it had been seven years since the Cooper Lease was executed.

---

[4] Diatom's objection to the alleged deficient procedural process was stated only in the "Introduction" section of its opposing brief and was not supported by any further argument or authority.

-4-

Diatom conceded California case law provides that a tenant's continued possession of the premises may be a valid exercise of an option to renew, citing ADV Corp. v. Wikman, 178 Cal.App.3d 61 (1986), but argued that ADV is distinguishable because the option to renew there was not required to be in writing. Diatom also argued that GFI, unlike the tenant in ADV, did not engage in any conduct prior to the expiration of the original term to indicate that it intended to extend the Cooper Lease for another five years. Attached to Diatom's opposition was a declaration from David Cooper and copies of cases and treatises Diatom argued supported its position that the Cooper Lease was on a month-to-month basis.

In reply, GFI argued that the Cooper Lease was silent on the mechanics by which the option to extend for additional five-year terms could be effected and nowhere in the "Term" section, which is the only place where the option is discussed, was there a requirement that exercise of the option be in writing. GFI argued that California and Ninth Circuit law was clear: when no writing is required under the terms of the lease to interpret a renewal, the conduct of the parties establishes it. Thus, GFI's continued possession and the actions of the parties conclusively established the option had been exercised to extend the Cooper Lease for a second five-year term, which was in place for thirty months prior to Diatom's issuance of Default Notice.

**2.    The bankruptcy court's ruling on the Motion to Assume**

At the hearing on the Motion to Assume, counsel for Diatom conceded the Cooper Lease was executory and could be assumed by GFI. However, Diatom objected to GFI's ability to seek what was

-5-

essentially a declaratory ruling as to the term of the Cooper Lease. Notwithstanding that objection, counsel proceeded to argue the Cooper Lease was only on a month-to-month term due to GFI's failure to communicate in writing that it was exercising the option to extend the lease for another five-year term. The bankruptcy court agreed that a debtor seeking to assume a lease cannot change or amend the lease's term. Nonetheless, it disagreed with counsel's contention that GFI had to provide notice, either in writing or otherwise, to extend the Cooper Lease. Counsel for Diatom conceded that the "Term" section was silent as to whether notice had to be given in order to extend it.

After hearing further argument from Diatom that the Cooper Lease was month-to-month, the bankruptcy court stated:

> I disagree. I think that continued occupation, continuing tendering of rent is probably enough to get them around this argument you have, which just lapsed into a month to month. Even your own client didn't treat this as a month to month because they've gone ahead and given two years after the fact a written notice, so even they don't think it's a month to month. I don't think that cuts much ice.

Hr'g Tr. (Nov. 6, 2013) 12:20-13:2.

The bankruptcy court entered an order approving the Motion to Assume on November 14, 2013. In addition to the required findings under § 365(b)(1), the court determined that the "Cooper Lease was extended by the conduct of the parties into its first five (5) year option term commencing as of December 30, 2010[.]" Diatom timely appealed.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. § 1334 and § 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.

-6-

## III. ISSUE

Did the bankruptcy court err when it determined in the context of the Motion to Assume the disputed issue of whether the Cooper Lease had been extended for another five years or whether its term was month-to-month?

## IV. STANDARD OF REVIEW

Whether the bankruptcy court's procedures comport with due process is reviewed de novo. Price v. Lehtinen (In re Lehtinen), 564 F.3d 1052, 1058 (9th Cir. 2009); Garner v. Shier (In re Garner), 246 B.R. 617, 619 (9th Cir. BAP 2000).

## V. DISCUSSION

**The bankruptcy court's decision to determine the term of the Cooper Lease in a contested matter rather than requiring an adversary or some other proceeding was harmless error.**

Diatom contends the bankruptcy court erred by deciding the issue of the Cooper Lease's term in the context of the Motion to Assume, which Diatom contends is a summary proceeding and limited in nature. Diatom argues the bankruptcy court exceeded the scope of its authority under § 365 when it decided this disputed contract issue, and it requests on appeal the "right to prove, through the appropriate legal procedure, that the lease term is month-to-month under clear California law." Diatom suggests the issue of the contract term would be best resolved in an unlawful detainer action or an action for declaratory relief. GFI argues that it was appropriate for the bankruptcy court to inquire into whether the Cooper Lease was unexpired as part of its ruling on the Motion to Assume.

Whether to assume or reject an executory contract or unexpired lease is left to the business judgment of the trustee or

-7-

debtor in possession. Official Creditors Comm. v. X10 Wireless Tech., Inc. (In re X10 Wireless Tech., Inc.), 2005 WL 6960205, at *3 (9th Cir. BAP Apr. 5, 2005)(citing Durkin v. Benedor Corp. (In re G.I. Indus., Inc.), 204 F.3d 1276, 1282 (9th Cir. 2000)). It is undisputed that only an executory contract or unexpired lease of the debtor existing at the time of petition is capable of being assumed; the issue whether the subject contract or lease has terminated prepetition is determined under state law. Vanderpark Props., Inc. v. Buchbinder (In re Windmill Farms, Inc.), 841 F.2d 1467, 1469 (9th Cir. 1987); In re Kong, 162 B.R. 86, 91 (Bankr. E.D.N.Y. 1993)(if the contract or lease has expired by its own terms or has been terminated prior to the petition date then nothing exists for debtor to assume or reject); § 365(a). The bankruptcy court clearly has the authority to determine this threshold issue. See In re Windmill Farms, Inc., 841 F.2d at 1472; In re Kong, 162 B.R. at 91 (before a debtor can seek relief under § 365(a), it must be established that an executory contract or unexpired lease exists at the time of the filing)(citing 2 COLLIER ON BANKRUPTCY ¶ 365.02 (Lawrence P. King et al., eds. 15th ed. 1992)).

The question of whether the Cooper Lease was "unexpired" was not disputed. Diatom repeatedly conceded the Cooper Lease was unexpired at the time GFI filed for bankruptcy and that it was capable of being assumed. What Diatom disputes is whether the bankruptcy court could determine the disputed lease term in the context of the Motion to Assume.

Diatom relies on Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.), 4 F.3d 1095, 1098 (2d Cir.

1993), to support its position that the bankruptcy court could not decide this issue in the context of the Motion to Assume. In Orion, the debtor entered into a prepetition contract with Showtime. Showtime contended Orion breached the contract and could not assume it. Orion moved to assume the contract under § 365 and simultaneously filed an adversary proceeding against Showtime claiming anticipatory breach. The bankruptcy court tried the breach issue in connection with the assumption motion. Determining that Orion had not breached, the court authorized the assumption and dismissed the related adversary proceeding as moot. The district court affirmed.

In reversing, the Second Circuit held § 365 did not authorize bankruptcy courts to resolve questions involving the validity of contracts in the context of assumption motions. "[I]t was error for the bankruptcy court to decide a disputed factual issue between the parties to a contract in the context of determining whether the debtor or trustee should be permitted to assume that contract." Id. at 1098. "At heart, a motion to assume should be considered a summary proceeding, intended to efficiently review the trustee's or debtor's decision to adhere to or reject a particular contract in the course of the swift administration of the bankruptcy estate. It is not the time or place for prolonged discovery or a lengthy trial with disputed issues." Id. at 1098-99.

Although not cited by the parties, the Ninth Circuit adopted the reasoning of Orion in In re G.I. Indus., Inc., 204 F.3d at 1282. There, a creditor had sued debtor for breach of contract in state court prepetition. Shortly thereafter, debtor filed a

-9-

chapter 11 bankruptcy case and attempted to remove the action to the bankruptcy court. After that failed, the trustee moved to reject the parties' contract. The bankruptcy court agreed the contract was burdensome; the rejection was within the sound business judgment of the trustee. Based on the rejection, the creditor filed a proof of claim for damages under § 365(g). The trustee objected to the proof of claim. As a result, the bankruptcy court held a five-day trial inquiring into the validity of the contract. The court ultimately disallowed the creditor's claim, finding that the contract was unenforceable due to a lack of mutual intent between the parties and a lack of consideration. The district court affirmed. Id. at 1279-80.

On appeal, the creditor contended the trustee's rejection of the contract conclusively established a statutory breach of contract that precluded the bankruptcy court from inquiring into the validity of the underlying contract. Id. at 1280. The Ninth Circuit disagreed, holding the bankruptcy court could properly examine the validity of a rejected contract during the claims process based on the plain language of § 502(b)(1). However, relying on Orion, it went on to hold:

> Based on the nature of a motion to reject and its complementary proceedings, it is inappropriate for the court to resolve questions involving the validity of a contract at the time of rejection. As the Second Circuit noted in Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.), 4 F.3d 1095 (2d Cir. 1993), "permitting a bankruptcy court to rule conclusively on a decisive issue of breach of contract would render the use of 'business judgment' . . . unnecessary." Id. at 1099. Orion correctly recognizes that adjudicating the validity of a contract at the time of rejection would turn a summary proceeding into a full trial on the merits, a result that would be inconsistent with the procedures found in the Bankruptcy Code. Instead, our approach gives effect to the plain language of the Bankruptcy Code

-10-

and allows a bankruptcy judge to postpone consideration of the validity of a contract until a full adversary proceeding can take place. This approach better conforms with the structure of the code.

Id. at 1282. In other words, the validity of a contract, if disputed, cannot be determined in the context of a motion to assume or reject. An adversary proceeding is required.

Whether a determination as to the "term" of an unexpired lease is a determination on the "validity" of a contract for purposes of § 365 is not clear. The Ninth Circuit has not defined exactly what falls into the "validity" category. Certainly, Diatom and GFI never questioned the Cooper Lease's "validity." However, taking a broad view of G.I. Indus., Inc., it may be that an adversary proceeding was required for the bankruptcy court to determine the term of the Cooper Lease. We need not decide that issue, however, because for all practical purposes an adversary proceeding was held in this case.

Diatom characterized the relief GFI sought as to the Cooper Lease's term as an action for declaratory relief. Generally, an adversary proceeding is required for a declaratory judgment under Rule 7001(9).

It is error to circumvent the requirement of an adversary proceeding by using a 'contested matter' motion under Rule 9014.[5] Such an error may nevertheless be harmless when the record of the procedurally incorrect 'contested matter' is developed to a sufficient degree that the record of an adversary proceeding likely would not have been materially different.

Ruvacalba v. Munoz (In re Munoz), 287 B.R. 546, 551 (9th Cir. BAP

---

[5] Under Rule 6006, a proceeding to assume, reject or assign an executory contract or unexpired lease is governed by Rule 9014.

-11-

2002); <u>Trust Corp. of Mont., Inc. v. Patterson (In re Copper King Inn, Inc.)</u>, 918 F.2d 1404, 1407 (9th Cir. 1990)(where the record shows the parties received adequate notice concerning the nature of the issues raised in a contested motion proceeding, extensive hearings occurred, briefing was submitted and the parties were given ample time to air their position; for all practical purposes an adversary proceeding was held). <u>See also</u> <u>Korneff v. Downey Reg'l Med. Ctr. Hosp., Inc. (In re Downey Reg'l Med. Ctr. Hosp., Inc.)</u>, 441 B.R. 120, 127 (9th Cir. BAP 2010) (bankruptcy court's decision not to require an adversary proceeding is subject to a harmless error analysis). "In such circumstances, the error does not affect the substantial rights of the parties and is not inconsistent with substantial justice." <u>In re Munoz</u>, 287 B.R. at 551. <u>See, e.g.</u>, 28 U.S.C. § 2111; Rule 9005; <u>In re Copper King Inn, Inc.</u>, 918 F.2d at 1406-07; <u>Laskin v. First Nat'l Bank (In re Laskin)</u>, 222 B.R. 872, 874 (9th Cir. BAP 1998); <u>United States v. Valley Nat'l Bank (In re Decker)</u>, 199 B.R. 684, 689-90 (9th Cir. BAP 1996).

Even if the bankruptcy court possibly erred in not requiring an adversary proceeding to determine the Cooper Lease's term, we conclude that such error was harmless. GFI was clear in its Motion to Assume what relief it was seeking and on what basis; it contended the Cooper Lease was in the middle of another five-year term. Diatom had the opportunity to comprehensively brief the issues and did so by filing its opposition, which included a declaration from David Cooper and copies of cases supporting its position that the term was month-to-month. Notably, while Diatom objected to the bankruptcy court determining the disputed term

-12-

issue in the context of the Motion to Assume, it has never fully briefed its objection until now. Plus, Diatom never requested a continuance of the hearing on the Motion to Assume. The hearing was held as scheduled; the parties had ample time to air their positions. After considering the parties' evidence and arguments, the bankruptcy court determined, as a matter of law, that the Cooper Lease term had been extended another five years.

On this record, we have difficultly understanding how Diatom was procedurally disadvantaged by the bankruptcy court's approach. We fail to see, particularly since the material facts were few and undisputed and the issue before the court was purely one of law, how an adversary (or some other) proceeding would have produced a materially different result. Diatom did not convince us otherwise in its appeal brief or at oral argument. Absent a credible argument or specific examples from Diatom showing it suffered some procedural disadvantage as a result of the bankruptcy court's procedure, the court allowing the matter to proceed as a contested motion rather than an adversary proceeding is not a sufficient reason to disturb the assumption order. Had the bankruptcy court determined the lease term issue in Diatom's favor, this matter would likely not be before us.

Accordingly, even if the bankruptcy court erred in not requiring an adversary proceeding to determine the term of the Cooper Lease, such error did not affect the substantial rights of the parties, is not inconsistent with substantial justice and was therefore harmless. In re Munoz, 287 B.R. at 551.[6]

---

[6] Diatom does not contest the bankruptcy court's
                                                    continue...

-13-

## VI. CONCLUSION

For the foregoing reasons, we AFFIRM.

---

[6]...continue determination that the Cooper Lease had been extended for an additional five-year term, only that it erred in making that determination in the context of the Motion to Assume. Therefore, we do not address the merits of the bankruptcy court's decision.